**In re Beatrice WHITE, Debtor.**

**Bankruptcy No. 3–89–02841.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 14, 1989.

Christopher M. Hawk, Dayton, Ohio, for debtors.

J. Timothy Cline, Jr., Dayton, Ohio, for Rent–A–Center.

Jennings W. Hurt, Jr., Columbus, Ohio, for Remco.

George W. Ledford, Englewood, Ohio, Trustee.

DECISION AND ORDER DENYING CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN WITH RESPECT TO REMCO

WILLIAM A. CLARK, Bankruptcy Judge.

Before the court is an objection of Remco to the confirmation of the chapter 13 plan of the debtor, Beatrice White. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter concerning the confirmation of a chapter 13 plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## PROCEDURAL POSTURE

On August 8, 1989 Beatrice White filed a petition in bankruptcy under chapter 13 of the Bankruptcy Code. The debtor's schedules listed Remco as holding a claim in the amount of $2000.00 secured by a stove, stereo and refrigerator having a value of $850.00. Remco has objected to being treated as a secured creditor under the terms of the debtor's plan on the ground that the debtor is leasing the collateral under three "lease-purchase agreements" and has not proposed to make the full rental payments required by those agreements. The debtor contends that the "lease-purchase agreements" are not leases because they fail to comply with Ohio's "Lease–Purchase Agreements" statute.

## CONCLUSIONS OF LAW

The initial issue before the court is whether the agreements between the debtor and Remco are "lease-purchase agreements" as defined by Ohio law or installment sales with disguised security interests in the stove, stereo and refrigerator. Although the interpretation of Section 365 of the Bankruptcy Code ("Executory Contracts and Unexpired Leases") is a matter of federal law, federal courts must look to state law in determining whether an agreement is an unexpired lease, and thereby subject to the assumption and rejection requirements of Section 365, or whether it is a financing arrangement falling outside the scope of Section 365. *In re Petroleum Products*, 72 B.R. 739, 742 (Bankr.Kan. 1987). If the agreements between the debtor and Remco are leases, then the debtor may retain possession of the goods only if she complies with the provisions of Section 365, which requires curing defaults, assuring future payments and compensating for pecuniary loss to the lessor. *Consumer Lease Network, Inc. v. Puckett, (In re Puckett)*, 60 B.R. 223, 233 (Bankr.M.D. Tenn.1986), *aff'd mem.*, 838 F.2d 470 (6th Cir.1988). If the agreements are installment sales with security interests in the goods, then the debtor may pay the value

of the goods through her chapter 13 plan. *Id.*

In Ohio, as of June 29, 1988, certain types of "lease-purchase agreements" are governed by Chapter 1351 of the Ohio Revised Code, which defines a "lease-purchase agreement":

> "Lease-purchase agreement" means an agreement for the use of personal property by an individual primarily for personal, family, or household purposes for an initial period of four months or less that is automatically renewable with each lease payment after the initial period and that permits the lessee to acquire ownership of the property. Ohio Rev. Code § 1351.01(F).

As explained in a recent decision of this court, *In re Bodine*, Bankruptcy Case No. 3–88–04005 (October 18, 1989), which is attached and whose rationale is incorporated into this decision, "lease-purchase agreements"—as defined by Ohio Rev.Code § 1351.01(F)—are not to be treated as retail installment sales nor as creating security.[1] Therefore, the traditional analysis of distinguishing a "true" lease from an installment sale with a disguised security agreement is irrelevant; the Ohio legislature has determined that, if a "lease-purchase agreement" satisfies the statutory definition of such an agreement, it is not an installment sale with disguised security.

The agreements in the instant matter (attached to Remco's "Objections to Confirmation") are "lease-purchase agreements" under Ohio law. They are agreements for the use of personal property (a stove, stereo, and refrigerator) by an individual primarily for personal, family, or household purposes. They are for an initial period of four months or less (2 weeks) and automatically renewable with each lease payment after the initial period. Finally, the agreements permit the lessee to acquire ownership of the property by renewing the agreement for 78 successive weeks.

The debtor asserts that Remco has violated § 1351.06(A) of the Ohio Revised Code which provides:

1. *Accord, In re Harris,* 102 B.R. 128 (Bankr.S.D. Ohio 1989).

(A) No lessor shall offer a lease-purchase agreement in which fifty per cent of all lease payments necessary to acquire ownership of the leased property exceed the cash price of the leased property. When fifty per cent of all lease payments made by a lessee equals the cash price of the property disclosed to the lessee pursuant to division (A)(11) of section 1351.02 of the Revised Code, the lessee shall acquire ownership of the leased property and the lease-purchase agreement shall terminate.

In addition, the court notes that under Ohio law a lessor shall not require "lease payments that in the aggregate exceed the maximum permissible amount set forth in section 1351.06 of the Revised Code." Ohio Rev.Code § 1351.04(C). In short, Ohio law prohibits the lessor from receiving more than twice the cash price of an item as rental payments.[2]

The following information from the "lease-purchase agreements" indicates that Remco's "Total Rental to Acquire Rental Ownership" is excessive under Ohio law.

| | Range | Refrigerator | Stereo |
|---|---|---|---|
| Weekly Rental Payment | $ 19.03 | $ 19.03 | $ 17.97 |
| Number of Weeks | 78 | 78 | 78 |
| Total Rental to Acquire Rental Ownership | $1484.34 | $1484.34 | $1401.66 |
| Cash Price | $ 698.54 | $ 726.10 | $ 687.94 |
| Cash Price Doubled | $1397.08 | $1452.20 | $1375.88 |

The debtor maintains that because the rental payments under her agreements with Remco do not comply with Ohio Rev. Code § 1351.06(A), the "lease-purchase agreements" are not true leases, and, therefore, the court must determine wheth-er the agreements are installment sales with disguised security interests. The court does not agree. As explained in *Bodine, supra,* the question of whether a "lease-purchase agreement" was initially created by the debtor and Remco is resolved by examining the definition of a "lease-purchase agreement" under Ohio Rev.Code § 1351.01(F). The court has found no indication in the statute that a "lease-purchase agreement" loses its identity as a "lease-purchase agreement" or becomes unenforceable because of a lessor's failure to comply with the non-definitional sections of Chapter 1351. Instead, the remedial provisions of Chapter 1351 provide that a lessor, who fails to comply with requirements of Chapter 1351, is liable for the damages described in Ohio Rev. Code § 1351.08.[3]

On the basis of the documents before the court, the debtor appears to have a cause of action against Remco under Ohio Rev. Code § 1351.08. That cause of action is, of course, not presently before the court. To pursue her claim against Remco the debtor may file an independent action against Remco in an appropriate forum.

Because of the debtor's potential recovery against Remco, the debtor's ultimate obligation to Remco is uncertain. It is clear, however, that the debtor's treatment of Remco under her plan as the holder of a secured claim, rather than as a lessor, is incorrect. Issues regarding "lease-purchase agreements" under Ohio law have

---

**2.** The debtor also maintains that there is a direct conflict between the language in the agreements providing for a "Cash Purchase Option" and the requirements of Ohio Rev.Code § 1351.06(B). The agreements state that "I can buy the property any time by paying Remco the difference between fifty percent (50%) of the total rental paid and the 'Cash Selling Price' stated above."

Ohio Rev.Code § 1351.06 provides:
(B) At any time after tendering an initial lease payment, a lessee may acquire ownership of the property that is the subject of the lease-purchase agreement by tendering an amount equal to the amount by which the cash price of the leased property exceeds fifty per cent of all lease payments made by the lessee.

The court is unable to discern a difference between the statute and the agreements with respect to a cash purchase option.

**3.** (A) A lessor who fails to comply with the requirements of this chapter with respect to a lease-purchase agreement is liable to the lessee in an amount equal to the sum of the following:
(1) The costs of the action and reasonable attorney's fees as determined by the court;
(2) The greater of the following:
(a) The actual damages sustained by the lessee as a result of the failure of the lessor;
(b)(i) In the case of an individual action, twenty-five per cent of the total amount necessary to acquire ownership of the property that is the subject of the lease-purchase agreement, but not less than two hundred dollars or more than one thousand dollars.... Ohio Rev.Code § 1351.08(A).

only recently been addressed by this court; therefore, the debtor will be granted an opportunity to propose a modification of her plan.

For the foregoing reasons it is hereby ORDERED that confirmation of the debtor's chapter 13 plan with respect to Remco is DENIED. It is further ORDERED that any proposed modification of the debtor's plan regarding her leases with Remco shall be filed within 30 days of the entry of this order.

### APPENDIX

United States Bankruptcy Court

Southern District of Ohio

Western Division

Entered Oct. 18, 1989

In re: Bennett A. Bodine and Amanda Bodine, Debtors.

Bankruptcy Case No. 3-88-04005

Rent-A-Center, Movant

-VS-

Bennett A. Bodine and Amanda Bodine, Respondents.

Contested Matter "A"

DECISION AND ORDER GRANTING MOTION OF RENT-A-CENTER TO LIFT AUTOMATIC STAY

Dated at Dayton, Ohio this 16th day of October, 1989.

Before the court is a motion of Rent-A-Center for relief from the automatic stay provisions of Section 362 of the Bankruptcy Code. The court has jurisdiction pursuant to 28 U.S.C. Section 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. Section 157(b)(2)(G). This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FACTS

On November 30, 1988 Bennett A. Bodine and Amanda Bodine filed a petition in bankruptcy under chapter 13 of the Bankruptcy Code and listed Rent-A-Center as a creditor with a claim of $500.00, secured by a television and VCR of the same value. The debtors proposed to pay the claim (including yearly interest of 8%) over a period of 20 months at the rate of $26.79 per month.

Rent-A-Center filed the instant motion for relief from the automatic stay on January 10, 1989 on the ground that the debtors had "rented" the TV and VCR from Rent-A-Center and had not made the agreed rental payments. The following "Stipulation of Facts" (Doc. 17) was entered into by the parties:

1. The Rent-A-Center and the Debtors, Bennett and Amanda Bodine, entered into the Agreement (attached as Exhibit A) on August 17, 1988, concerning a 25 inch Magnavox, color television and a Zenith VCR.

2. The laws in Ohio as to Lease Purchase Agreements, to wit, Ohio Revised Code Sections 1301.01; 1347.01 and 1351.01 and 1351.04 were amended with the effective date of the amendments being June 28, 1988.

3. The Debtors filed for protection under Chapter 13 of the Federal Bankruptcy laws on November 30, 1988.

4. The Debtors had paid a total of $236.86 on the agreement from August 17, 1988 through November 30, 1988.

5. The Debtors continue to have possession of the items that are listed in the "Lease Purchase Agreement."

6. If the Debtors, Bennett and Amanda Bodine, were sworn and testified before this Court they would testify that they intended to purchase the items listed in Exhibit A attached.

### CONCLUSIONS OF LAW

The issue before the court is whether the agreement between the debtors and Rent-A-Center is a "lease-purchase agreement" as defined by Ohio law or an installment sale with a disguised security interest in the TV and VCR. Although the interpretation of Section 365 of the Bankruptcy Code ("Executory Contracts and Unexpired

Leases") is a matter of federal law, federal courts must look to state law in determining whether an agreement is an unexpired lease, and thereby subject to the assumption and rejection requirements of Section 365, or whether it is a financing arrangement falling outside the scope of Section 365. *In re Petroleum Products*, 72 B.R. 739, 742 (Bankr.Kan.1987). If the agreement between the debtors and Rent–A–Center is a lease, then the debtors may retain possession of the goods only if they comply with the provisions of Section 365, which includes curing defaults, assurance of future payments and compensation for pecuniary loss to the lessor. *Consumer Lease Network, Inc. v. Puckett (In re Puckett)*, 60 B.R. 223, 233 (Bankr.M.D. Tenn.1986), *aff'd mem.*, 838 F.2d 470 (6th Cir.1988). If the agreement is an installment sale with a security interest in the TV and VCR, then the debtors may pay the value of the goods through their chapter 13 plan. *Id.*

In Ohio, as of June 29, 1988, certain types of "lease-purchase agreements" are governed by Chapter 1351 of the Ohio Revised Code, which defines a "lease-purchase agreement":

> "Lease-purchase agreement" means an agreement for the use of personal property by an individual primarily for personal, family, or household purposes for an initial period of four months or less that is automatically renewable with each lease payment after the initial period and that permits the lessee to acquire ownership of the property. Ohio Rev. Code Section 1351.01(F).

Certain leases, e.g. business and motor vehicle leases, are not included in the definition of a "lease-purchase agreement."[1] Chapter 1351 of the Ohio Revised Code also contains provisions governing required disclosures in connection with a "lease-purchase agreement," prohibited provisions in the agreement, terms that the lessor may not require, the lessee's right of reinstatement, the lessee's right to acquire ownership when 50% of the payments equals the cash price of the goods, advertising, the lessor's liability for noncompliance, and limitations on the lessor's liability. Ohio Rev.Code Section 1351.02 *et seq.*

Although the court is unable to discover the precise impetus for the enactment of Chapter 1351, two objectives of the legislation are clear. First, Chapter 1351 was enacted "to exempt from the retail installment sales law lease-purchase agreements that have an initial term of four months or less and are automatically renewable and to prescribe the form of and require certain disclosures in those agreements." Am. H.B. 421, 117th OGA, Page's Legislative Bulletin # 3, p. 150 (1988). As a result, Ohio law now provides that a " 'retail installment sale' does not include a lease-purchase agreement as defined in division (F) of section 1351.01 of the Ohio Revised Code." Ohio Rev.Code Section 1317.01(A). Second, the same bill that enacted Chapter 1351, amended, as underscored below, contains the definition of "security interest" under Ohio's version of the U.C.C.:

> *A lease-purchase agreement as defined in division (F) of section 1351.01 of the Revised Code shall never be intended as security.* Whether a lease, *other than a lease-purchase agreement as defined in division (F) of section 1351.01 of the Revised Code*, is intended as security is to be determined by the facts of each case, except that (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

---

1. A "lease purchase agreement" does not include any of the following:
   (1) A lease for agricultural, business, or commercial purposes;
   (2) A lease made to an organization;
   (3) A lease of money or intangible personal property;
   (4) A lease of a motor vehicle as defined in section 4501.01 of the Revised Code.
Ohio Rev.Code Section 1351.01(F)

Ohio Rev.Code Section 1301.01(KK). *See* Am.H.B. 421, *supra.*

As a result of these two simultaneous changes in Ohio law, "lease-purchase agreements" are not to be treated as retail installment sales nor as creating security interests.

Here, the debtors agreed to rent the TV and VCR from Rent–A–Center for $18.01 per week. The agreement stated that the debtors were not obligated to renew the agreement beyond the initial term and could terminate it at the end of any week. Under the agreement, if the debtors renewed the agreement for 57 successive weeks, they would have paid a total of $968.48 and would be the owners of the property. The agreement specifically stated "You, the undersigned Renters(s), are renting from Rent–A–Center, Owner, the property described above at the rental rate shown." The agreement also provided that "We [Rent–A–Center] own the property described herein. You do not own the property and will not acquire any ownership rights in it unless you have, at your option, complied with the ownership terms of this agreement ... or unless you exercise the Early Purchase Option explained in paragraph 4C below."

By definition, this agreement is a "lease-purchase agreement" under Ohio law. It is an agreement for the use of personal property (a TV and VCR) by individuals primarily for personal, family, or household purposes. It is for an initial period of four months or less (one week) and is automatically renewable with each lease payment after the initial period (paragraph 1 of the agreement). Finally, the agreement permits the lessee to acquire ownership of the property either by renewing the agreement for 57 successive weeks or exercising the option for early purchase (paragraph 4 of the agreement).

The debtors, however, submit that the agreement violates the provision of Ohio law governing the option of an early purchase. Section 1351.06(B) of the Ohio Revised Code provides:

*At any time after tendering an initial lease payment,* a lessee may acquire ownership of the property that is the subject of the lease-purchase agreement by tendering an amount equal to the amount by which the cash price of the leased property exceeds fifty percent of all lease payments made by the lessee. (Emphasis Supplied)

The "lease-purchase agreement" of the debtors and Rent–A–Center contains the following provision:

C. Early Purchase Option: You may purchase the property *at any time after the initial rental period* by paying us the cash price minus 50% of all rental renewal payments made by you. The cash price of this property would be $484.22, not including tax. (Emphasis Supplied)

Although apparently conceding that the variation between Ohio law and the agreement is *de minimus,* the debtors, nevertheless, contend that the agreement's early option to purchase clause violates Ohio law and, therefore, the agreement falls outside the scope of Chapter 1351.

The difference seems rather slight at first but the difference is clear. The statute requires that after tendering the first payment the lessee has the right to purchase while the agreement requires that you wait until after the initial rental period. This period may be a week or a month under this agreement but in either event the agreement does not comply with the Ohio statutes and therefore the agreement does not come within the prohibition of a non-security agreement.

The law is clear as to agreements which do not comply with the new statute. Judge Rice decided in a similar case to this one that these agreements are disguised security agreements and are installment sales. (citation omitted) In this case the court found that whether the parties intended the agreement to be a security interest is fact sensitive. (Debtors' Memorandum of Law)[2]

---

**2.** Having found no cases interpreting chapter 1351 of the Ohio Revised Code, the court is

perplexed by the debtors' assertion that the law is clear with respect to agreements not comply-

The debtors' defense is tenuous in the best light. Had the debtors attempted to purchase the TV and VCR on the third day after the agreement was executed, it is difficult to believe that Rent–A–Center would have refused to accept their money until four more days had passed. Additionally, after the first week of the agreement, the offending provision was without any further force or effect.

Because this is a case of first impression and no case law interpreting Chapter 1351 of the Ohio Revised Code has been located, the court will construe the statute according to its plain meaning while keeping in mind the legislative intent that "lease-purchase agreements" are not retail installment sales and are never to be intended as security. As noted, above, the agreement satisfies Ohio's definition of a "lease-purchase agreement." Section 1351.01(F). Debtors' defense is grounded on the theory that if a "lease-purchase agreement" fails to comply with *any* of the requirements of Chapter 1351, even in the slightest manner, the agreement is transformed into an installment sales contract with a disguised security agreement. It is not apparent why the agreement before the court should be drastically recharacterized as an installment sales contract because of a violation of a *non-definitional* section of Chapter 1351, rather than viewed simply as a "lease-purchase agreement" with a slight imperfection.

The early option to purchase provision of the agreement and Ohio Rev.Code Section 1351.06(B) cover the termination of the lease by the debtor's exercise of an option to purchase and the rights and terms of such a purchase. The purchase option and Ohio Rev.Code § 1351.06(B) have no relevancy to the nature of the agreement, i.e. whether a "lease-purchase agreement" was initially created by the parties. Again, that question is resolved by examining the definition of a "lease-purchase agreement" under Ohio Rev.Code Section 1351.01(F). Nowhere in the statute is there an indication that a "lease-purchase agreement" loses its identity as a "lease-purchase agreement" or that it becomes unenforceable because of a failure to comply with a non-definitional section of Chapter 1351.[3] Instead, the remedial provisions of Chapter 1351 provide that a lessor, who fails to comply with the requirements of Chapter 1351, is liable for damages as described in Ohio Rev.Code Section 1351.08.[4]

In summation, the agreement between the debtors and Rent–A–Center for the rental of a TV and VCR is a statutory "lease-purchase agreement" with a slightly defective clause, affecting neither the formation of the "lease-purchase agreement" nor its enforceability. Because the debtors do not propose to pay the rental agreement according to its terms, the court finds that cause exists under Section 362(d)(2) of the Bankruptcy Code to terminate the automatic stay.

This motion is being heard post-confirmation. Although Rent–A–Center's objection to confirmation was overruled at an earlier hearing, it was overruled with the understanding that the rental agreement had been signed prior to the effective date of Chapter 1351 of the Ohio Revised Code. It is now known that a later agreement was signed after the effective date of the legislation. Therefore, the court's earlier con-

ing with the statute. The case referred to by the Debtors was decided five years before the enactment of the statute under consideration.

**3.** Cf: Ohio Rev.Code Section 1317.08 which specifically provides that retail installment contracts containing certain prohibited provisions are unenforceable.

**4.** Debtors, in their memorandum of law, assert that they are entitled to damages under Ohio Rev.Code Section 1351.08. However, "[a] hearing on relief from the automatic stay is typically not the proper forum for the assertion of counterclaims against the party seeking relief." *In re Dennison*, 50 B.R. 950, 953 (Bankr.E.D.Pa.1985). To the extent that the debtors' counterclaim goes to the validity of the "lease-purchase agreement" itself, the court has considered their counterclaim, but will not adjudicate the matter of damages. Even if the court were inclined to rule on the issue of damages, the limited record before the court ("Stipulation of Facts") is quite clearly inadequate to provide a basis for a determination of damages.

firmation order does not affect the rights of Rent–A–Center under the "lease-purchase agreement." The court also recognizes that, because of confirmation, the applicability of the automatic stay becomes questionable. Rather than delve into the subtleties of that subject, the court shall simply treat this matter as a motion by the creditor to relieve it from any stay or confirmation provision so that it may seek to regain possession of its property.

Because this is the first time that the court has determined the effect of rental agreements under Chapter 1351 of the Ohio Revised Code, it would be reasonable to permit the debtors an opportunity to amend their plan so as to avoid the termination of the automatic stay. However, in the instant case the debtors' payment record and a pending motion to reduce plan payments from $75.00 a month to $50.00 per month, demonstrate that an increase in plan payments to satisfy the debtors' obligation to Rent–A–Center is not possible.

For the foregoing reasons the motion of Rent–A–Center is GRANTED and it is hereby ORDERED that the automatic stay of 11 U.S.C. Section 362 is terminated with respect to the property of Rent–A–Center in the possession of the debtors and that Rent–A–Center is relieved from the effects of this court's earlier order of confirmation.

(s) William A. Clark
WILLIAM A. CLARK
UNITED STATES
BANKRUPTCY JUDGE