**In re Brian Keith MAHONEY.**

**RENT–A–CENTER, INC., Appellant,**

**v.**

**Brian Keith MAHONEY and Barbara Ann Mahoney, Appellees.**

**Civ. A. No. 92–CV–2587–DT.**
**Bankruptcy No. 91–07664–G.**

United States District Court,
E.D. Michigan, S.D.

Nov. 6, 1992.

---

Stuart J. Rice, Rice, Rice & Gilbert, Bingham Farms, MI, for appellant.

Lineas L. Baze, Jackson, MI, for appellees.

## *MEMORANDUM OPINION AND ORDER*

FRIEDMAN, District Judge.

This matter is presently before the Court on appeal by Plaintiff–Appellant Rent–A–Center, Inc. (hereinafter RAC) from a final order denying its objection to confirmation of Defendant–Appellees Brian and Barbara Mahoney's Chapter 13 plan and its motion to require acceptance or rejection of the rental-purchase agreements.

### *Facts*

Defendant–Appellees filed their petition for Chapter 13 on July 3, 1991. The debtor, Barbara Mahoney, had entered into four rental-purchase agreements with the RAC store located in Jackson, Michigan.[1] Under the agreements, RAC rented to the debtor certain items of personal property. The agreements were for terms of either one week or one month, according to the debtor's choice. Thereafter, the debtor could renew the agreements by paying an additional week's or month's rent or she could terminate the agreements without any further obligation.[2] To terminate the agreements the debtor was required only to return the rented property. The agreements provided purchase options by which the debtor could purchase the rented property according to a formula set forth in the

---

**1.** These agreements were entered into between October 26, 1990, and June 11, 1991.

**2.** Other than the payment of any past due rent.

Michigan Rental–Purchase Agreement Act. MCl 445.954.[3]

The agreements also provided that the debtor was liable for damage to the rented merchandise in excess of normal wear and tear as well as for any loss or destruction of the property. RAC was obligated to maintain the leased property in good working condition during the term of the lease.

RAC objected to confirmation of debtor's Chapter 13 plan, which listed it as a secured creditor, and moved to compel these debtors to accept or reject the rental-purchase agreements. On May 6, 1992, the bankruptcy judge entered an order denying RAC's objection to confirmation and its motion to require acceptance or rejection of the rental-purchase agreements on the ground that they were not "true" leases.

### Jurisdiction and Legal Standard

█ District Court jurisdiction over this appeal is based on 28 U.S.C. sec. 158(a).[4] In reviewing the Bankruptcy Court's legal conclusions the district court is not bound by the Bankruptcy Court's conclusions of law, and is free to make an independent examination of a question of law or mixed question of law and fact. Therefore, in making its determination, the Court will undertake a *de novo* review. *In re Fasano/Harriss Pie Co.*, 71 B.R. 287, 290 (Bankr.W.D.Mich.1987).

### Discussion

The determinative issue in this case is whether the Rental–Purchase Agreements are "true" leases triggering the provisions of 11 U.S.C. sec. 365, or whether they are disguised security agreements in the form of retail-installment contracts.

The Bankruptcy Code provides for acceptance or rejection of leases in 11 U.S.C. sec. 1322(b)(7). In bankruptcy cases, if the agreements are "true leases," the debtors may retain possession and use of the goods only by complying with Section 365 of the

Bankruptcy Code. 11 U.S.C. Sec. 1322(b)(7). Section 365 provides in relevant part:

> (d) ... the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
>> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default[.]

█ Although the interpretation of Section 365 is a matter of federal law, "federal courts must look to state law in determining whether an agreement is an unexpired lease, and thereby subject to the provisions of Section 365, or whether it is a financing arrangement falling outside the provisions of Section 365." *In re White*, 109 B.R. 768, 769 (Bankr.S.D.Ohio 1989); *see also In re Petroleum Products*, 72 B.R. 739, 742 (Bankr.D.Kan.1987).

Under Michigan law, the determination of whether or not a lease is intended as security is governed by M.C.L. 440.-1201(37), which reads in pertinent part:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration does make the lease one intended for security.

█ In general, the best way to determine if an agreement is a "true" lease is to

---

3. The language of the purchase option reads: "You may purchase the property leased to you under this contract for the cash price minus 45% of all periodic payments made. The property leased under this contract would cost _____ if purchased rather than leased."

4. This statute states, in relevant part, that "district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges...."

ascertain whether the 'lessee' is obligated to accept and pay for the property or instead is obligated only to return or account for the property if he or she chooses not to exercise the privilege of purchasing it. *In re Celeryvale Transport, Inc.*, 822 F.2d 16, 18 (6th Cir.1987). See also *U.S. Fidelity and Guaranty Co. v. Thompson and Green Machinery Co.*, 568 S.W.2d 821 (Tenn.1978). In *Celeryvale*, the Court noted that "[i]f the former is true, then the lease is a security instrument in a disguised sale; if the latter, then a true lease exists." *Id.* However, Michigan has not applied subsection (b) to the situation presented here, where a renter may at any time, terminate an agreement with no further liability. RAC argues that these agreements are "true" leases because a security interest can only exist where there is an *obligation* to be secured. M.C.L. 440.-1201(37) provides that a " 'Security interest' means any interest in personal property or fixtures *which secures payment or performance of an obligation.*" Under the rental-purchase agreements, the debtor paid rent for each week or month in advance and was never obligated to renew the agreements, but could instead terminate the agreements at the end of any term with no further obligation by simply returning the property to RAC. This termination provision was clearly stated in the debtor's Rental–Purchase Agreements:

You may terminate this lease at the end of any weekly/monthly term without paying any charges other than those previously due.

Testimony indicates that this provision was fully understood by the debtor, Barbara Mahoney, as evidenced by direct examination.[5] The debtor had previously taken advantage of her right to terminate in an earlier agreement.[6] Indeed, the right to terminate is required by the Michigan Rental–Purchase Agreements Act, M.C.L. 445.957(c).

Since the debtor, Barbara Mahoney, was under no obligation to renew the rental-purchase agreements, but instead could terminate them at her will with no further obligation, the leases should not be characterized as "security purchase contracts." There is simply no obligation to be secured.

A leading case regarding the terminability of a lease is *Matter of Marhoefer Packing Co., Inc.*, 674 F.2d 1139 (7th Cir.1982).[7] In *Marhoefer*, the initial term of the lease was for four **years**. Upon expiration of the initial term, the debtor had the option to either purchase equipment or renew the lease for another four years. At the end of the second four-year term, the debtor had the option to purchase at a price of $1.00. 674 F.2d at 1140–41. The court concluded that:

Clearly, where a lease is structured so that the lessee is *contractually bound* to pay rent over a set period of time at the conclusion of which he automatically or for only nominal consideration becomes the owner of the leased goods, the transaction is in substance a conditional sale and should be treated as such. It is to this type of lease that clause (b) [of sec. 1–201(37) ] properly applies. Here, however, Marhoefer was under *no contractual obligation* to pay rent until such time as the option to purchase the [equipment] for one dollar was to arise....

674 F.2d at 1142–43 (emphasis added). The court in *Marhoefer* ultimately held that since the lessee had the right to terminate

---

**5.** Q: Were you told about the option of just a short term rental on these items if you wanted to do that?
A: Well, I was told that I could bring them back at any time.
Q: And were you told what would happen if you took them back?
A: That all of my payments would end and they would have possession of the merchandise. Tr. at pp. 22–23.

**6.** A: ... She rented a stereo system from us that she did return on January 31st of 1991.

Q: And when she returned it, was she liable for any further payments to you?
A: No, she was not liable for any further payments. There was a past due amount of $6.68 that we waived. Tr. at p. 27.

**7.** The Bankruptcy Court declined to follow *Marhoefer's* holding, stating: "It is not binding on me and it is distinguishable." Tr. at p. 40. The court, however, did not explain how *Marhoefer* was distinguishable.

the transaction without further obligations it was not a conditional sale. *Id.*

Here, the debtor fully complied with the rental-purchase agreement after making one weekly or monthly payment and would not be able to exercise the purchase option to obtain the merchandise until she renewed the agreements for a specified number of **weeks**. Therefore, as in *Marhoefer*, the debtor here was under no contractual obligation to pay rent until such time that she automatically became the owner of the leased merchandise. The Bankruptcy Court was in error in finding *Marhoefer* inapplicable to this case. The two cases are not significantly distinguishable.

Neither has the debtor in this case committed to pay a sum certain creating a debt to be secured by the leased goods. In *In re Huffman*, 63 B.R. 737 (Bankr.N.D.Ga. 1986), the debtor leased an electric stove under an agreement that closely resembles the rental-purchase agreement in the present case. The initial term of the lease was one week, and the agreement provided that if the lease was renewed for 78 successive weeks, the debtor would obtain title to the stove. 63 B.R. at 737–38. The court specified three elements key to distinguishing a security agreement from a lease:

> One, there must be an agreement by the lessee to pay the lessor a set amount. Two, the amount must be equivalent to the value of the leased goods. Three, the lessee must become the owner or have the option to become the owner of the leased goods. If any one of these elements is lacking, the lease is not a financing agreement but is a true lease.

63 B.R. at 738. The court held that since the debtor had not agreed to pay a "sum certain" for the use of the range, there was no debt to be secured. 63 B.R. at 739. Here as in *Huffman*, the debtor was under no obligation to pay a sum certain beyond the latest weekly or monthly payment. Thereafter, debtor had the option to either renew the lease or terminate at any time. Thus, as in *Huffman*, the debtor in this

case had not committed to a debt secured by the leased goods.

The Bankruptcy Court held that the rental-purchase agreements did not accurately convey the nature of the transaction. This concern was misplaced because the Michigan Legislature, in 1985, enacted the Michigan Rental–Purchase Agreement Act, M.C.L. 445.951 *et seq.*, which recognizes that rental-purchase agreements are a distinct category of personal property leases and regulates them accordingly.[8]

The Act defines a "Rental-purchase agreement" as:

> [A]n agreement for the use of merchandise by a lessee primarily for personal, family, or household purposes for an initial period of 4 months or less that is automatically renewable with each payment after the initial period and that permits the consumer to become the owner of the property.

M.C.L. 445.952(d). The Michigan Legislature has even provided a sample rental-purchase agreement. M.C.L. 445.970. The Act provides a comprehensive regulatory scheme for rental-purchase agreements. Although the Bankruptcy Court may not have considered the agreement to be a "clear document," the legislature has determined otherwise. The Bankruptcy Court's contention that the "purchase option" clause was confusing and difficult to calculate the price is also misplaced. This paragraph was taken verbatim from the sample approved by the legislature, and the formula used is required by M.C.L. 445.954. Testimony by debtor indicates that she adequately understood her right to terminate the lease at any time. TR. at p. 22.

There is an additional reason why this agreement does not qualify as an installment contract. The Michigan Legislature has amended the Michigan Retail Installment Act to clarify that a rental-purchase agreement is not a "retail installment contract." M.C.L. 445.852(g) includes the following language:

---

**8.** Since Michigan enacted this Act in 1985, at least 29 other states have followed Michigan's lead by enacting similar legislation. See Clark, *Law of Secured Transactions*, 2d Ed. (1988, Cum.Supp. No. 1), p. s12–12.

Retail installment contract does not include a rental-purchase agreement as defined in section 2 of the rental-purchase agreement act....

The Bankruptcy Court's holding that the debtor's rental-purchase agreements are "purchase contracts" is erroneous as a matter of law. The rental-purchase agreements between the debtor and RAC are not leases "intended as security" as the term is defined in the Michigan Uniform Commercial Code. M.C.L. 440.1201(37). Here, the debtor has the right to walk away from these rental-purchase agreements at any time without any obligation whatsoever other than accrued back rent and liability for excessive wear and tear. There is no obligation to continue payments for a specified period. The Michigan Legislature did not intend to make these agreements "intended for security" when it specifically excluded them from its definition of a retail installment sale.

The decision of the Bankruptcy Court should be reversed. Under Michigan law, as well as the law in other states, the rental-purchase agreements are clearly "true" leases. RAC should not be penalized for relying on the stated intent of the legislature in using the form drawn by them with the purpose of avoiding such confusion. RAC's objection to the confirmation of the debtor's Chapter 13 plan, which listed RAC as a secured creditor is sustained and the debtor is required to either assume or reject the leases. For the above reasons,

IT IS ORDERED that the decision of the Bankruptcy Court below is reversed. Appellant's objection to the confirmation of the debtor's Chapter 13 plan is sustained.

IT IS FURTHER ORDERED that debtor is required to either assume or reject the leases.