**In re John V. STREET, Debtor.**

**Bankruptcy No. 97–22446–JKF.**

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 24, 1997.

Michael S. Geisler, Monroeville, PA, for Debtor.

Gary J. Gaertner, Pittsburgh, PA, Chapter 13 Trustee.

William Schorling, Amy Tonti, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, for Rent–Way, Inc.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before this court is creditor Rent–Way, Inc.'s objection to the confirmation of the chapter 13 plan dated April 23, 1997, filed by debtor John V. Street (Debtor). The issue was submitted on the parties' briefs in connection with confirmation of the plan dated April 23, 1997, as modified. There are no material facts in dispute. We must determine whether the property is subject to a security interest or to the Pennsylvania Rental–Purchase Agreement Act, 42 Pa.Cons.Stat.Ann. § 6901 et seq. (1996). We find that the Rental–Purchase Agreement Act applies. Therefore, Rent–Way's objection to Debtor's chapter 13 plan is sustained.

Debtor argues that the leased items are estate property because he retained possession of the property upon filing this chapter 13 bankruptcy on April 9, 1997. We note that § 1306, and § 541 incorporated in § 1306 by reference, defines property of the estate broadly enough to apply to a mere possessory interest in personal property. Thus, for purposes of this opinion, we will assume, without deciding, that Debtor's possessory interest in the leased items is estate property. However, we find that his possessory interest is insufficient to defeat Rent–Way's statutory rights under the Pennsylvania Rental–Purchase Agreement Act.[2]

On January 3, 1997, Debtor executed and delivered to Rent–Way rental purchase agreements for weekly payments for use of the following property: (1) a washer and a dryer—$19.99 a week; (2) a VCR—$9.99 a week; (3) an entertainment unit, a VCR, a 27–inch television—$42.99 a week; and (4) a stereo and a 19–inch television—$16.99 a week. See Exhibit A to Brief In Support of Confirmation of Chapter 13 Plan Dated April 23, 1997 (hereafter "Debtor's Brief"). See also Memorandum of Law in Support of Objection of Rent–Way, Inc. to Confirmation of Chapter 13 Plan Dated April 23, 1997, at 1 (hereafter "Rent–Way's Brief"). Both Debtor and his nondebtor wife, Connie Street, were listed as renters, but only Debtor was signatory to the January leases.

Sometime before Debtor filed the instant bankruptcy case, the January leases were terminated as the result of Debtor's nonpayment of the weekly rental amounts.[3] In March of 1997, one month before this chapter 13 was filed on April 9, 1997, Connie Street executed and delivered new leases for the same items on the same payment terms. The March leases are at issue. Again, pay-

---

1. This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

2. In *In re Marta Group, Inc.*, 33 B.R. 634, 641 (Bankr.E.D.Pa.1983), the court noted that, although the debtor had no property interest in consigned goods, the automatic stay barred the creditor from reclaiming the goods without first obtaining relief from stay. The court pointed out that § 362(a)(3) prohibits a creditor from taking "any act to obtain possession of property of the estate *or of property from the estate*". That the stay applies in the first instance in the matter before us is not dispositive of the issue of whether Debtor's possessory interest in the leased property is sufficient to enable him to include payment for it in his chapter 13 plan.

3. Debtor defaulted in payments after three or four weeks on leases whose terms ranged from 42 to 104 weeks. Exhibit A to Debtor's Brief.

ments were not made.[4] As of the date the bankruptcy was filed approximately $180 was owed under the March leases. As of the date Rent–Way filed its objection, approximately $900 was owed. Unpaid rentals continue to accrue at the rate of $89.96 per week.[5]

Rent–Way points out that Debtor, although named as a renter, is not a signatory to the leases. Rent–Way argues that Debtor has, at best, only a possessory interest in the property. Rent–Way's Brief at 3. The rental agreements refer to "you" and "your" with respect to obligations under the lease. "You" and "your" are defined in each agreement as "the person(s) signing the lease as renter(s)". Exhibit B to Debtor's Brief. According to the terms of the lease, only Mrs. Street, the sole signatory, is bound. Therefore, Debtor is not a party to the lease. That he may have a possessory interest does not dictate the outcome in this case.

The couple retained possession of the appliances when Debtor filed this chapter 13 bankruptcy on April 9, 1997. The plan was confirmed on an interim basis on July 10, 1997, subject to this decision on Rent–Way's objection to confirmation. The plan classifies Rent–Way's claim as secured and proposes to pay it "from available funds at 10% interest ... until fully paid." Chapter 13 Plan Dated 4/23/97 at ¶ 3. Rent–Way contests Debtor's classification of this debt as a secured claim. In Rent–Way's opinion, the rental purchase agreements executed by Mrs. Street are leases subject to the Rental–Purchase Agreement Act and do not create a security interest. We agree. The Pennsylvania Rental–Purchase Agreement Act governs.

The Act defines rental-purchase agreement as

[a]n agreement for the use of personal property by an individual primarily for personal, family or household purposes for an initial period of four months or less that is automatically renewable with each rental payment after the initial period and that permits the lessee to acquire ownership of the property. It does not include nor is it subject to laws governing any of the following:

. . . .

(7) A security interest as defined in 13 Pa.C.S. § 1201. . . .

Section 1201 of title 13, the Uniform Commercial Code, defines "security interest" and provides a formula for determination of whether the interest is a lease or a security interest. However, the agreements at issue fall squarely within the scope of the Rental–Purchase Agreement Act. They are for use of personalty by an individual for household purposes. The initial period was one week or month. Exhibit B to Debtor's Brief at ¶ 1. Renewal is automatic with each rental payment, id., and the renter may acquire ownership of the property. id. at ¶¶ 6, 8, 9. All disclosures required by the Act are included in the agreement. It is not alleged that any prohibited provisions are included.[6]

Debtor argues that the property is subject to a security interest because there will be no residual value left in the collateral at the end of the lease. Debtor cites *In re Phoenix Pipe & Tube, L.P.,* 154 B.R. 197 (Bankr. E.D.Pa.1993), for the proposition that an option to purchase for nominal consideration renders the arrangement one for security and not a lease. Debtor argues that because the agreement provides that the property will be owned at the end of all rental payments, *In re Phoenix Pipe & Tube. L.P.* applies.

Debtor mischaracterizes the terms of the rental-purchase agreements at issue. Each agreement provides that ownership will not be attained unless the agreement is renewed for the total number of rental periods stated therein or the early purchase option is exer-

4. *Mrs.* Street defaulted after three payments on leases whose terms ranged from 38 to 100 weeks. Exhibit B to Debtor's Brief.

5. The leases provide that the rental term is either one week or one month and that the term is renewed by making rental payments on or before the renewal date. Exhibit B to Debtor's Brief.

6. We note that the rental purchase agreement document apparently has two sides. *See* Exhibit B to Debtor's Brief at ¶ 5. Only one side has been provided to the court.

cised, as stated in paragraph 9 of the agreement. Exhibit B to Debtor's Brief, at ¶ 6. It is not disputed that the provisions of the agreement comply with the terms of the Act governing acquisition of ownership. *See* 42 Pa.Cons.Stat.Ann. § 6905(b).

Rental-purchase agreement statutes exist in other jurisdictions. Courts interpreting those statutes have held that they create a distinct category of personal property leases. *In re Mahoney,* 153 B.R. 174, 178 (E.D.Mich. 1992); *In re Rigg,* 198 B.R. 681, 685 (Bankr. N.D.Tex.1996).

■ When a rental-purchase agreement statute that classifies the collateral as subject to a lease applies, a security interest is not created. In *In re Mahoney,* 153 B.R. 174 (E.D.Mich.1992), the court noted that when a lessee is contractually bound to pay rent over a specified period of time the transaction is actually a conditional sale. *Id.* at 177, quoting *Matter of Marhoefer Packing Co., Inc.,* 674 F.2d 1139, 1142–43 (7th Cir.1982). However, when the lessee is "obligated only to return or account for the property if he or she chooses not to exercise the privilege of purchasing it", it is a true lease. 153 B.R. at 177. In *Mahoney,* the debtor was not bound to pay rent until she automatically became the owner of the property. *Id.* at 178. The court concluded, therefore, that Michigan's Rental–Purchase Agreement Act applied. In *Mahoney,* as in the matter before us, the lessee could terminate at any time. *See also In re Morris,* 150 B.R. 446, 449 (Bankr. E.D.Mo.1992) (whether debtors become owners of the property is at their option; absent an absolute obligation to purchase, no conditional sale exists). In the matter before us, the lease need not be renewed. The lessee can terminate the lease at any time after the initial period. Exhibit B to Debtor's Brief at ¶ 10. Consequently, we agree with the court in *In re Rigg,* 198 B.R. 681, 683 (Bankr. N.D.Tex.1996), which found that where the right to terminate is available before the option to purchase arises, the lease is a true lease.

In *In re White,* 109 B.R. 768 (Bankr. S.D.Ohio 1989), the court noted that the Ohio legislature has determined that a "lease-purchase" agreement which satisfies the statutory definition of such agreements "is not an installment sale with disguised security." *Id.* at 769. The Ohio statute defines "lease-purchase agreement" in language identical to that in the Pennsylvania Rental–Purchase Agreement Act defining "rental-purchase agreement". 42 Pa.Cons.Stat.Ann. § 6902. The Michigan Rental–Purchase Agreement Act, M.C.L. 445.952(d), also contains similar definitional language. *In re Mahoney,* 153 B.R. 174, 178 (E.D.Mich.1992).

■ We find that when an agreement comports with the terms of the Rental–Purchase Agreement Act it is a lease and not a security interest. "Property interests are created and defined by state law", *Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), and the Pennsylvania legislature has determined that interests arising under agreements such as that at issue are leases.

Based on the foregoing, even if the property is property of the estate, the agreement is a lease. Debtor, who is not a signatory to the lease, cannot assume or reject it.[7] Accordingly, Rent–Way's objection to the plan is sustained.

---

7. Because Debtor is not liable on the lease and cannot assume or reject it, we need not address whether a cure of the prepetition defaults under the March leases, in accordance with lease terms for reinstatement after default, could be achieved through the assumption process of § 365 or the plan confirmation process of § 1322(b)(3) and (7).