**In re David Lynn BLEVINS, Debtor.**

**Bankruptcy No. 90–01797–C.**

United States Bankruptcy Court, N.D. Oklahoma.

Sept. 19, 1990.

Robert A. Todd, Tulsa, Okl., for debtor.

Victor E. Morgan, Tulsa, Okl., for Rent–A–Center.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter comes on to be heard upon the motion of Rent–A–Center, Inc. ("RAC") for modification of automatic stay and abandonment of property and the objection of RAC to confirmation of Debtor's proposed Chapter 13 plan and this Court being fully advised in the premises finds as follows.

### STATEMENT OF FACT

David Lynn Blevins ("Debtor") entered into rental purchase agreements with RAC as follows.

December 2, 1989, VCR, color television set.

January 17, 1990, bedroom set.

February 6, 1990, compact disc player.

February 16, 1990, microwave oven.

June 7, 1990, stereo speakers.

The agreements were entered into the Oklahoma Rental–Purchase Act, Title 59, Section 1951, et seq. Section 1951, subd. 6 provides as follows:

"Rental-purchase agreement" means an agreement for the use of personal property by a consumer for personal, family, or household purposes, for an initial period of four (4) months or less, that is renewable with each payment after the initial period, and that permits the consumer to become the owner of the property. An agreement that complies with this definition is not a consumer credit sale as defined in Section 2–104 of Title 14A of the Oklahoma Statutes, or a consumer loan as defined in Section 8–104 of Title 14A of the Oklahoma Statutes, or a refinancing or consolidation thereof, or a consumer lease as defined in Section 2–106 of Title 14A of the Oklahoma Statutes, or a lease or agreement which constitutes a security interest as defined in Section 1–201 of Title 12A of the Oklahoma Statutes or a lease or agreement which constitutes a sale of goods as defined in subsection (4) of Section 2–105 of Title 14A of the Oklahoma Statutes; ...

The Agreements themselves contain the following provisions.

### RENT. PURCHASE AGREEMENT

You, the undersigned Renter(s), are renting from RENT–A–CENTER, Owner, the property described above at the rental rate shown. As used in this Agreement, "you" and "your" mean the person(s) signing this Agreement ...

1. RENEWAL PAYMENTS: You are not obligated to renew this Agreement beyond the initial term. However, you may renew this Agreement beyond the initial term making an advance rental payment on Friday of each week for successive weekly terms, or you may renew for monthly terms on the 19th day of each month, as you choose.

   A. The weekly rental payment is $22.99, plus tax of $1.61, totaling $24.60, subject to any change in the applicable tax rate.

   B. The monthly rental payment is $91.99, plus tax of $6.44, totaling $98.43, subject to any change in the applicable tax rate.

2. TERMINATION: You are not obligated to renew this Agreement and may terminate it at the end of any weekly or monthly rental period. To do so, you must make arrangements to return the property and make all rental payments due through the date of return. If you do not renew this Agreement on or be-

fore the due date (or if you breach any other important term of this Agreement), this Agreement will automatically terminate but you will remain liable for the weekly or monthly rent charges (prorated and accrued daily) for the property until it is returned. The property must be returned to us in its present condition, fair wear and tear acceptance.

3. REINSTATEMENT: If you fail to make a rental renewal payment by the due date, this Agreement automatically terminates, and we are entitled to return of the property; PROVIDED, *you may reinstate this Agreement within two (2) days of the due date by paying all missed rental renewal payments, plus a reinstatement fee of $5.00 if you renew this Agreement monthly, and $3.00 if you renew this Agreement weekly.* You must return the property to use during the reinstatement period if we ask you to do so. If you return the property as requested during the reinstatement period, you will have the right to reinstate the Agreement for thirty (30) additional days, without losing any rights or options previously acquired under this Agreement. Upon reinstatement, we will provide you with the same property you are presently renting, or substitute property of comparable condition and quality.

4. OWNERSHIP:

A. We own the property described herein. You do not own property, and will not acquire any ownership rights therein unless you have, at your option complied with the ownership terms of this Agreement.

B. If you renew this Agreement for 78 successive weeks, you will pay a total of $1,793.22, or if you renew this Agreement for 18 successive months, you will pay a total of $1,655.82, and will own the property. Figures do not include tax.

C. EARLY PURCHASE OPTION: You may purchase the property at any time after the initial rental period by paying 60% of the total weekly rental renew payments which you would pay to acquire ownership if you renew this Agreement on a weekly basis, or by paying 60% of the total monthly rental renew payments which you would pay to acquire ownership if you renew this Agreement on a monthly basis, set forth in paragraph 4B above.

6. LIABILITY: You will be liable for damage in excess of normal wear and tear, and loss or destruction of the property by any cause, including but not limited to the and vandalism. You must pay us the fair market value of the property if, for any reason, you fail to return it to use when this Agreement ends. In no event will the amount exceed the total you would pay to own the property set out in paragraph 4C above.

10. TITLE AND MAINTENANCE: We retain title to the property at all times, and will maintain it in good working order. Our obligation to maintain the property shall continue for the initial rental term, and any renewal terms. We will not be responsible for costs or results of any repairs done by others.

On June 28, 1990, Debtor filed for relief under Chapter 13 of the Bankruptcy Code. The claims of RAC were listed in the Schedules as unsecured claims. Thereafter, Debtor filed his proposed plan wherein he provided that all unsecured claims would receive approximately 67% of their claim.

Debtor's position is that the Rental Purchase Agreements are a separate and distinct type of contact that is neither a lease nor a secured transaction and that RAC's claim is an unsecured claim. RAC contends that the Rental Purchase Agreement is a lease which must be accepted or rejected by the Debtor pursuant to § 1322(a)(7) and § 365(a) of the Bankruptcy Code. These Sections are as follows:

(a) The plan shall—

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trust-

ee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

The issue before the Court is whether RAC is an unsecured creditor or a lessee with title in the property. If RAC is a lessee, then the Debtor may assume the lease and make the contract payments and cure any default, or the Debtor may reject the lease, in which case, RAC is entitled to possession of the property.

This issue has been addressed and decided by several courts and they all have held that the Agreement is a true lease and the Debtor must either assume the payments under the Agreement and catch up any default or reject the lease and return the property.

In *In re Harris*, 102 B.R. 128 (Bkrtcy.S. D.Ohio 1989), the court in construing a similar Ohio law stated as follows:

The Agreements create a lessor-lessee relationship, not intended as security, and do not create a retail installment sale. Therefore, the debtors' proposal to treat Remco's claim as an unsecured claim for the balance required to purchase the washer and dryer, absent assumption of the Agreements as executory contracts consistent with the mandates of 11 U.S.C. §§ 365(a) and 1322(b)(7), is not treatment authorized by the provisions of the Bankruptcy Code.

See also *In re Mitchell*, 108 B.R. 166 (Bkrtcy.S.D.Ohio 1989); *In re White*, 109 B.R. 768 (Bkrtcy.S.D.Ohio 1989); and, *In re Glenn*, 102 B.R. 153 (Bkrtcy.E.D.Ark.1989).

This Court agrees with these decisions and finds that the Agreement in this case is a true lease and the Debtor must either assume the lease payments, cure any default, or reject the lease and return the property. Under the terms of the Agree-

ment, the lessee is not required to make the payments but can, at any time, unilaterally terminate the Agreement and return the property. This is the essence of a lease.

The Debtor makes two principal arguments. The first argument is that under the terms of paragraph 6 of the Agreement if the lessee fails to return the property when the Agreement ends, then the lessee must pay the lessor the fair market value of the property. The Debtor argues that the Agreement has ended because the Debtor has not made the payments and, therefore, the Debtor has a right to pay the fair market value of the property and retain it. This argument must be rejected. The provisions of paragraph 6 only apply where the lessee is unable to return the property. This is a liquidated damage clause and must be read in conjunction with the other sentence of paragraph 6 making the lessee liable for any damages for excess wear and tear or for the loss or destruction of the property.

The other provisions of the Agreement, including paragraph 5, make it clear that if the Agreement is not renewed, the lessor has the immediate right to possession of the property. This right to possession of the property, if the payments are not made, is further supported by the clear explanation that title to the property remains in the lessor. Also under the termination clause in paragraph 2 it is provided that the property must be returned upon termination.

The Debtor also argues that under the express terms of the Rental Purchase Statute, the Agreement in question, is not a lease. This is a misreading of the statute. The statute provides that a rental purchase agreement is not a *consumer* lease as defined in 14A O.S. § 2–106. A *consumer* lease described therein is one for a term exceeding four (4) months. A rental purchase agreement is a lease for four (4) months or less as an original term plus renewal options each week or month. It is a lease even though not a consumer lease.

A separate judgment order will be entered.