In re Michael V. COLIN, Sandra K. Colin, Debtors.

Bankruptcy No. 391–32884–H13.

United States Bankruptcy Court, D. Oregon.

Oct. 30, 1991.

Magar E. Magar, Portland, Or., for debtors.

Kolleen Sebby, Vancouver, Wash., for Rentown.

## OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter comes before the court upon an objection to confirmation of the debtors'

proposed chapter 13 plan. The objections were filed on behalf of Affordable Rent To Own, Inc. dba Rentown USA ("Rentown"). The debtors are represented by Magar E. Magar of Portland, Oregon and Rentown is represented by Kolleen Sebby, of Vancouver, Washington.

The creditor objects to the proposed plan on the ground that it treats two agreements it entered into with one of the debtors as one contract of sale rather than two leases. One of the agreements was entered into on August 1, 1989 (the "first agreement") and the other on June 8, 1990 (the "second agreement"). Both agreements allow the debtor to terminate the contract at any time without further obligation to pay. Both agreements also provide that upon completion of the payments under the agreements, the debtor becomes the owner of the goods in question without further obligation. Upon early termination of the agreements by failure to pay or otherwise, the debtor must return the goods. It appears undisputed that the debtor is in default under both agreements. Copies of both agreements are attached as exhibits "A" and "B". The creditor argues that the agreements are true leases and must be assumed or rejected under 11 U.S.C. § 365.

The debtors respond that the agreements are actually contracts of sale under Oregon law and can be treated as such in the plan. Alternatively, the debtors argue that, even if the agreements are true leases, the contracts are unconscionable under Oregon law and should not be enforced. The unconscionability argument stems solely from the allegation that the price charged for the use or purchase of the goods is too high. The debtors request a further hearing to offer evidence as to the appropriate price for the goods in question.

1. Contract of sale versus lease.

a. *The Second Agreement.*

■ At the time the second agreement was entered into, ORS 71.2010(37)(a) provided the following:

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee....

Since the second agreement does not create an obligation for the term of the lease and is subject to termination by the lessee, ORS 71.2010(37)(a) does not require that the court treat the agreement as a contract of sale and security interest. Thus, the court must determine whether the facts of this case are sufficient to cause the court to treat the agreement as a contract of sale.

The principal feature of a contract of sale is that the buyer becomes obligated to pay the purchase price of the goods in exchange for the right to receive title to the goods. Thus, where an alleged lease agreement provides that the lessee may terminate his obligations under the agreement at any time for any reason with no further obligation to pay, the agreement cannot be a contract of sale.

When faced with a similar contract, the Bankruptcy Court for the Northern District of Oklahoma made the following observation:

Under the terms of the Agreement, the lessee is not required to make the payments but can, at any time, unilaterally terminate the Agreement and return the property. This is the essence of a lease.

*In re Blevins,* 119 B.R. 814, 817 (Bankr. N.D.Okla.1990). This court agrees. Thus, the court concludes that the second agreement is a true lease.

b. *The First Agreement.*

■ The first agreement was entered into in August, 1989 and is governed by the law in existence at the time it was entered into. At that time, Oregon law provided as follows:

Whether a lease is intended as security is to be determined by the facts of each case, however, ... an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

ORS 71.2010(37).

If the literal language of this statute is applied to the first agreement, the agreement must be treated as a contract of sale. On the other hand, as just discussed, it would be absurd to hold that an agreement that does not require the lessee to pay the purchase price of a good is a contract of sale. Indeed, the provisions of the termination clauses in the contracts at issue embody "the essence of a lease." *Blevins*, at 817.

The language of the statute reveals that the purpose of ORS 71.2010(37) is to effectuate the contracting parties' intent regardless of the title they give to their agreement. In a contract of sale, the parties intend that the purchaser will pay the purchase price of the goods over time and will ultimately acquire title to the goods.

■ If a "lessee" must pay the entire lease obligation and then has the option to buy the goods for a price that is substantially below market value, it is difficult for the "lessor" to convincingly argue that a sale wasn't intended all along. The key facts are:

1. That the lessee MUST pay the entire contract price; and

2. That the option price is significantly less than the value of the property so that the lessee cannot, as a practical matter, refuse to exercise the option.

In this case, the first element is missing. Since the lessee can terminate the agreement at any time, it does not appear that the parties intended a sale rather than a lease. Thus, there is no reason to treat the agreement as a contract of sale except for the literal language of the statute.

■ A court may not normally refuse to apply the literal language of a statute.

*U.S. v. Ron Pair Enterprises, Inc.* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). A court may do so, however, if rote application of the statute will lead to an absurd result. *U.S. v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). This court believes that a literal application of the statute in question would lead to an absurd result. Such an interpretation would call an agreement a contract of sale even though it lacked one of the essential elements of a contract of sale, namely an obligation to pay the purchase price agreed upon. Thus, the court rules that the first agreement is also a true lease.

2. Unconscionability.

■ The debtors argue that both contracts are unconscionable because the total price to be paid for the goods leased under the agreements greatly exceeds the value of the goods. In effect, the debtors argue that a lease may be declared unconscionable solely on the ground that the rental charged by the lessor is too high.

The debtors argue that they should be permitted to present evidence concerning the details of the lessor's financial affairs so that the court can determine what a "reasonable profit" would be for the lease of goods such as these.

The debtors have not cited any Oregon authorities to the effect that price alone can render a contract unconscionable. The debtors have cited several cases from other jurisdictions that consider price in assessing whether a contract is unconscionable. In every case reviewed by the court on this issue, however, there have been other facts present that indicate overreaching or inequitable conduct on the part of the seller or lessor in addition to the consideration charged under the agreement. No such additional facts have been alleged by the debtors in this case.

■ Moreover, this court believes that price alone may not render a contract unconscionable. It is not appropriate for a court to substitute its judgment for that of buyers and sellers in a free market. Such

action by the courts would ultimately result in a controlled economy that limited an honest seller's profit or an informed buyer's ability to obtain a bargain and would completely undermine the economic principles upon which the economy of this country operates.

The common law instructs that a court will not examine the adequacy of consideration. While the Uniform Commercial Code was intended to change certain aspects of the common law and to grant consumers special rights, there is no indication that the UCC was intended to supplant this fundamental and necessary aspect of the law. This is especially true where there is no allegation of wrongdoing or inequitable conduct on the part of the lessor.

█ Finally, the court recognizes the axiom that a contract will be considered unconscionable where it shocks the court's conscience. Such a finding should require exceptionally egregious facts. In this case, the agreements clearly point out that the lessee has no obligation to retain the goods and that he may terminate the agreement at any time. The agreements even explain to the lessee that he may acquire the goods at a lower total cost if he simply purchases them outright. Also, the second contract provides that the first month's rent is free. Thus, under that contract, the lessee could have retained the goods for one month and then returned them without having paid or become obligated to pay the lessor anything.

It also appears that the debtor went to the lessor after the first contract had been in force for nearly a year and executed a second, nearly identical agreement for the rental of additional property. If the first agreement's terms were so unfair as to be unconscionable, it is unlikely the debtor would return nearly a year later for more economic abuse.

When considering the agreements as a whole, the court concludes, as a matter of law, that the agreements are not unconscionable in any respect. Accordingly, Rentown's objection to confirmation will be sustained. The court will enter an order requiring the debtors to promptly assume or reject the leases under § 365 and denying confirmation of the proposed plan. Having so ruled, the court perceives no need for an evidentiary hearing at this time.