**In re Arthur Charles RIGG, Art Rigg, and Tonia Jessica Rigg, Debtors.**

**Bankruptcy No. 495–42450–MT–13.**

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

Feb. 9, 1996.

---

Stephen Stasio, Stasio & Stasio, Fort Worth, Texas, for Debtors.

Seymour Roberts, Simon, Anisman, Doby & Wilson, P.C., Fort Worth, Texas, for Creditor.

Tim Truman, Chapter 13 Trustee, Fort Worth, Texas.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MASSIE M. TILLMAN, Bankruptcy Judge.

There came on to be heard the Motion For Order Compelling The Assumption Or Rejection Of Unexpired Lease Under 11 U.S.C. § 365 And Brief In Support Thereof, filed by Rent–A–Center (hereinafter referred to as "RAC"). Present at this hearing was RAC who appeared by and through its attorney of record, Seymour Roberts, Jr., of the law firm of Simon Anisman, Doby & Wilson, P.C.; Arthur Charles Rigg, Art Rigg and Tonia Jessica Rigg by and through their attorney of record, Steve Stasio, Esq. After considering the pleadings, evidence and argument of counsel, this Court makes the following findings of fact and conclusions of law.

1. On 27 June 1995, Arthur Charles Rigg and Tonia Jessica Rigg (hereinafter referred to as the "Riggs") filed their voluntary Petition for relief under Chapter 13 of the United States Bankruptcy Code.

2. The standing Chapter 13 Trustee for the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division is Tim Truman, Esq., whose mailing address is 7001 Grapevine Highway, Suite 510, Fort Worth, Texas 76180.

3. This Court has jurisdiction to hear this Motion For Order Compelling the Assumption Or Rejection Of Unexpired Lease Under 11 U.S.C. § 365 And Brief In Support Thereof, by virtue of 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (M) and (O).

4. On 31 October 1994, the Riggs entered into a Rental–Purchase Agreement with RAC. Under this Rental–Purchase Agreement, the Riggs rented a RCA thirty-one inch (31″) stereo television set. The initial term of this Rental–Purchase Agreement was one week, but this term was renewable if certain conditions, stated therein, were met. The rental rate was $19.99 per week plus tax.

5. On 13 February 1995, the Riggs entered into a Rental–Purchase Agreement, with RAC. Under this Rental–Purchase Agreement the Riggs rented a used eighteen (18) cubic foot Whirlpool refrigerator. On 6 April 1995, the Riggs returned that refrigerator to RAC and entered into a Rental–Purchase Agreement for a new eighteen (18) cubic foot Whirlpool refrigerator. The initial term of this Rental–Purchase Agreement was one week, but this term was renewable if certain conditions, stated therein, were met. The rental rate for the new eighteen (18) cubic foot Whirlpool refrigerator was $19.99 per week plus tax.

6. On 17 March 1995, the Riggs, entered into a Rental–Purchase Agreement with RAC. Under this Rental–Purchase Agreement, the Riggs rented a RCA forty-six inch (46″) television set. On 20 March 1995, the Riggs returned that television and entered into a Rental–Purchase Agreement for a new RCA fifty-two inch (52″) projection television set. The initial term of this Rental–Purchase Agreement was one week, but this term was renewable if certain conditions, stated therein, were met. The rental rate for the new RCA fifty-two inch (52″) projection television set was $39.99 per week plus tax.

7. Under the Rental–Purchase Agreement the Riggs were not obligated to renew beyond the initial term, and could terminate at any time by returning the property to RAC. The Riggs could renew the lease terms by making an advance payment of the weekly rental amount. The Rental–Purchase Agreements clearly states that RAC is the owner of the property and that the Riggs do not own the property and will not acquire any owners rights unless they have complied with the ownership terms of the Rental–Purchase Agreements. The Rental–Purchase Agreement go on to state that failure to make a rental renewal payment by the due date will automatically terminate the Rental–Purchase Agreements and that RAC is entitled to the immediate return of the property.

8. The Riggs remain in possession of the RCA thirty-one inch (31″) color television, RCA fifty-two inch (52″) projection television and the Whirlpool eighteen (18) cubic foot refrigerator.

9. RAC objects to the Riggs' proposed Chapter 13 plan on the grounds that it improperly designates RAC as an undersecured creditor. RAC argues that, under Texas law, the Riggs' Rental–Purchase Agreements with RAC are "true" leases which, under the Bankruptcy Code, must either be accepted according to their terms and brought current or they must be rejected and the property returned. See 11 U.S.C. § 365.

10. The Riggs have argued that their Rental–Purchase Agreements were actually a "disguised" sale with a "lease intended as security." See Uniform Commercial Code § 1–201–(37) (1972 version), 1 Uniform

Laws Annotated at 68 (1989) (a lease "intended as security" for an obligation is a "security interest").

11. The same argument has been made, and rejected, in a number of states. Numerous courts have recognized that, because the debtor is under no obligation to renew the rental agreement, but may instead terminate that rental agreement at any time with no further obligation, the lease cannot be characterized as a lease intended for security. In a recent case involving similar rental-purchase agreements, the Seventh Circuit held:

> [W]here a lessee has the right to terminate the lease before the option arises to purchase the property for no additional or nominal consideration, the lease is a true lease and cannot be a conditional sale.... The Debtor in this case could terminate the Royce Agreements at any time after the initial two-week rental period, making the Agreements true leases under *Marhoefer* . . .

> We recognize, of course, that for lessees who rent furniture intending eventually to own it, these Agreements function as secured installments sales (provided the lessee makes all the payments). But unlike buyers in standard installment sales, Royce's hybrid 'rental-buyers' are not obligated to make payments, and they can change their minds and return the furniture at any time. This flexibility is not worthless, and in return Royce earns the benefits of a lease when some of its renter-buyers become insolvent.

*In re Powers*, 983 F.2d 88, 90–91 (7th Cir. 1993). Several other courts have reached the same conclusion. See *In re Glenn*, 102 B.R. 153 (Bkrtcy.E.D.Ark.1989); *In re Huffman*, 63 B.R. 737 (Bkrtcy.N.D.Ga.1986); *In re Morris*, 150 B.R. 446 (Bkrtcy.E.D.Mo.1992); *In re Frady*, 141 B.R. 600 (Bkrtcy.W.D.N.C. 1991); *In re Colin*, 136 B.R. 856 (Bkrtcy. D.Or.1991); and *In re Unger*, 95 B.R. 761 (Bkrtcy.D.Or.1989).

12. Because the Riggs have the right to return the merchandise at any time with no further obligation (other than the payment of back rent), it is clear that, under the Uniform Commercial Code, the Riggs' Rental–Pur-

chase Agreements with RAC cannot be characterized as "leases intended for security."

13. The status of the Riggs' agreement with RAC becomes even clearer when recent additions to the Texas statutes are considered.

14. In 1985 the Texas Legislature enacted the Rental–Purchase Agreements Act. This statute defines and comprehensively regulates rental-purchase agreements. A "rental-purchase agreement" is defined as:

> an agreement for the use of merchandise by a consumer for personal, family, or household purposes, for an initial period of four months or less that is automatically renewable with each payment after the initial period, and that permits the consumer to become the owner of the merchandise.

Tex.Bus. & Com.Code § 35.71(6). This statute requires certain disclosures in rental-purchase agreements, prohibits certain practices, and expressly authorizes other practices. Tex.Bus. & Com.Code § 35.72. The agreements in this case fall within the statutory definition and comply with all the statutory requirements.

15. At the same time it enacted Rental–Purchase Agreements Act, the Texas Legislature also amended the Retail Installment Sales Act to clarify that a rental-purchase agreement was not a "retail installment contract".

16. The Retail Installment Sales Act defines a "retail installment transaction" as a transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract under which the buyer agrees to pay the unpaid balance together with a time price differential. Vernon's Texas Civil Statutes, Article 5069–6.01(e). It defines a "rental installment contract" as an instrument evidencing a "retail installment transaction." In language tracking Vernon's Texas Civil Statutes, Art. 5069–6.01(f), the Act further provides:

> The term 'retail installment contract' may included a chattel mortgage, a security agreement, a conditional sale contract and a contract in the form of a bailment or a lease if the bailee or lessee contracts to pay as compensation for their use a sum substantially equivalent to or in excess of the value of the goods sold and if it is agreed that the bailee or lessee is bound to become, or for no other or a merely nominal consideration, has the option of becoming the owner of the goods upon full compliance with the provisions of the bailment or lease.

Vernon's Texas Civil Statutes, Art. 5069–6.01(f).

17. To avoid any argument that a rental-purchase agreement should be construed as a retail installment contract, the Texas Legislature added the following sentence at the end of the section just quoted:

> A rental-purchase agreement that complies with the requirements of Subchapter F, Chapter 35, Business & Commerce Code, is not a retail installment contract.

Vernon's Texas Civil Statutes, Art. 5069–6.01(f).

18. If transactions between RAC and the Riggs is not a retail installment sale, and the Texas Legislature has said that it is not, then it can only be characterized as a lease.

19. The Texas Legislature further clarified the status of rental-purchase agreements in Texas when, in 1989, it adopted the official 1987 amendments to the Uniform Commercial Code. The last, lengthy sentence of Tex.Bus. & Com.Code, § 1–201(37)—the sentence beginning with the words "[w]hether a lease is intended as security ..."—was deleted. In its place, the Texas Legislature substituted the following:

> (B) whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and
>
> (i) the original term of the lease is equal to or greater than the remaining economic life of the goods,
>
> (ii) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(iii) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(iv) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

Tex.Bus. & Com.Code § 1–201(37) (emphasis added). Thus, "a lease agreement can be construed to create a security interest only if the agreement prohibits the lessee from terminating the lease." *In re Holden,* (Bkrtcy. D.Kan., No. 94–10524, filed October 3, 1994) at 11. In this case, as already noted, the Riggs' Rental–Purchase Agreement with RAC could be terminated at any time simply by returning or arranging to return, the rental property.

 20. Through the Rental–Purchase Agreements Act, the Texas Legislature has expressly recognized rental-purchase agreements as a distinct category of lease agreements. Through the 1985 amendment to the Retail Installment Sales Act, the Texas Legislature has expressly recognized that a rental-purchase agreement is not a retail installment transaction. Through the 1989 amendment to § 1–201(37) of the Tex.Bus. & Com.Code, the Texas Legislature has recognized that, because it is terminable at will, a rental-purchase agreement creates a "true" lease and not a "security interest."

21. Section 1322 of the Bankruptcy Code provides in relevant part:

(b) Subject to subsections (a) and (c) of this section, the plan may— . . .

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section.

11 U.S.C. § 1322.

22. 11 U.S.C. § 365 provides:

(a) Except as provided in section 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default[.]

11 U.S.C. § 365.

 23. If a debtor chooses to assume the an executory contract or unexpired lease he must assume them according to their terms. An "assumed contract or lease is accompanied by all its provisions and conditions. *"In re Nashville White Trucks, Inc.,* 5 B.R. 112, 116 (Bkrtcy.M.D.Tenn.1980). An executory contract cannot be rejected in part and assumed in part; the debtor must assume both the benefits and the burdens of the contract. *In re Flores,* 32 B.R. 455, 459 (Bkrtcy.S.D.Tex.1983). "Nothing in Section 365 gives a debtor the right to extend or vary the terms of an assumed executory contract. The Court has no authority under Section 365 to vary the terms of a contract assumed under the provisions of the law." *In re Mellen,* 79 B.R. 385, 387 (Bkrtcy.N.D.Ill. 1987).

24. If the Riggs wish to reject their Rental–Purchase Agreements, they should promptly make arrangements to return the merchandise to RAC. If they wish to assume the agreements, they should amend their plan to so provide.

### ORDER GRANTING MOTION FOR ORDER COMPELLING THE ASSUMPTION OR REJECTION OF UNEXPIRED LEASE UNDER 11 U.S.C. § 365

There came on to be heard the Motion For Order Compelling The Assumption Or Rejection Of Unexpired Lease Under 11 U.S.C. § 365, filed by Rent–A–Center, whereby Rent–A–Center sought to have this Court direct Arthur Charles Rigg and Tonia Jessica Rigg to decide whether to assume or reject three (3) leases which Arthur Charles Rigg and Tonia Jessica Rigg had entered

into pre-petition with Rent–A–Center, denominated as Rental–Purchase Agreements; good cause having been shown and the Court having filed its Findings Of Fact And Conclusions Of Law, in conformity herewith it is, hereby

ORDERED, ADJUDGED AND DECREED that the Motion For Order Compelling The Assumption Or Rejection Of Unexpired Lease Under 11 U.S.C. § 365 is granted, and Arthur Charles Rigg and Tonia Jessica Rigg are hereby compelled to file a motion to either assume or reject the three (3) Rental–Purchase Agreements with Rent–A–Center, which they entered into pre-petition, within ten (10) days from the date of the entry of this Order.