Opinion issued August 31, 2007


















 In The

Court of Appeals

For The

First District of Texas






NO. 01-04-01185-CV

 __________


EXCEL AUTO AND TRUCK LEASING, L.L.P., Appellant


V.


ALIEF INDEPENDENT SCHOOL DISTRICT, CHARTERWOOD
MUNICIPAL UTILITY DISTRICT, CHELFORD ONE MUNICIPAL
UTILITY DISTRICT, CIMARRON MUNICIPAL UTILITY DISTRICT,
CITY OF BAYTOWN, CITY OF DEER PARK, CITY OF HOUSTON, CITY
OF KATY, CITY OF PASADENA, CLEAR BROOK CITY MUNICIPAL
UTILITY DISTRICT, CY-CHAMP PUBLIC UTILITY DISTRICT,
CYPRESS-FAIRBANKS INDEPENDENT SCHOOL DISTRICT, DEER
PARK INDEPENDENT SCHOOL DISTRICT, FALLBROOK UTILITY
DISTRICT, GOOSE CREEK CONSOLIDATED INDEPENDENT SCHOOL
DISTRICT, HARRIS COUNTY, HARRIS COUNTY EDUCATION
DEPARTMENT, HARRIS COUNTY EMERGENCY SERVICE DISTRICT
NO. 1, HARRIS COUNTY EMERGENCY SERVICE DISTRICT NO. 7,
HARRIS COUNTY EMERGENCY SERVICE DISTRICT NO. 9, HARRIS
COUNTY EMERGENCY SERVICE DISTRICT NO. 28, HARRIS COUNTY
FLOOD CONTROL DISTRICT, HARRIS COUNTY FORT BEND
EMERGENCY SERVICE DISTRICT NO. 100, HARRIS COUNTY
HOSPITAL DISTRICT, HARRIS COUNTY MUNICIPAL UTILITY
DISTRICT NO. 33, HARRIS COUNTY MUNICIPAL UTILITY DISTRICT
NO. 38, HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 64,
HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 81, HARRIS
COUNTY MUNICIPAL UTILITY DISTRICT NO. 120, HARRIS COUNTY
MUNICIPAL UTILITY DISTRICT NO.132, HARRIS COUNTY
MUNICIPAL UTILITY DISTRICT NO. 158, HARRIS COUNTY RURAL
FIRE PREVENTION DISTRICT NO. 13, HARRIS COUNTY RURAL FIRE
PREVENTION DISTRICT NO. 16, HARRIS COUNTY RURAL FIRE
PREVENTION DISTRICT NO. 17, HARRIS COUNTY RURAL FIRE
PREVENTION DISTRICT NO. 20, HARRIS COUNTY RURAL FIRE
PREVENTION DISTRICT NO. 24, HARRIS COUNTY RURAL FIRE
PREVENTION DISTRICT NO. 25, HARRIS COUNTY RURAL FIRE
PREVENTION DISTRICT NO. 26, HARRIS COUNTY RURAL FIRE
PREVENTION DISTRICT NO. 29, HARRIS COUNTY RURAL FIRE
PREVENTION DISTRICT NO. 46, HARRIS COUNTY RURAL FIRE
PREVENTION DISTRICT NO. 48, HARRIS COUNTY UTILITY
DISTRICT NO. 6, HARRIS COUNTY WATER CONTROL AND
IMPROVEMENT DISTRICT NO. 113, HARRIS COUNTY WATER
CONTROL AND IMPROVEMENT DISTRICT NO. 132, HARRIS COUNTY
WATER CONTROL AND IMPROVEMENT DISTRICT NO. 133,
HORSEPEN BAYOU MUNICIPAL UTILITY DISTRICT, HOUSTON
COMMUNITY COLLEGE DISTRICT, HOUSTON INDEPENDENT
SCHOOL DISTRICT, HUMBLE INDEPENDENT SCHOOL DISTRICT,
KATY INDEPENDENT SCHOOL DISTRICT, KLEIN INDEPENDENT
SCHOOL DISTRICT, LAKE FOREST UTILITY DISTRICT, LEE
COLLEGE DISTRICT, LOUETTA NORTH PUBLIC UTILITY DISTRICT,
NORTH BELT UTILITY DISTRICT, NORTH FOREST INDEPENDENT
SCHOOL DISTRICT, NORTH HARRIS MONTGOMERY COMMUNITY
COLLEGE DISTRICT, NORTHPARK PUBLIC UTILITY DISTRICT,
NORTHWEST HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO.
16, PASADENA INDEPENDENT SCHOOL DISTRICT, PONDEROSA
FOREST UTILITY DISTRICT, PORT OF HOUSTON AUTHORITY OF
HARRIS COUNTY, RANKIN ROAD WEST MUNICIPAL UTILITY
DISTRICT, SAGEMEADOW UTILITY DISTRICT, SAN JACINTO
COMMUNITY COLLEGE DISTRICT, SPRING BRANCH INDEPENDENT
SCHOOL DISTRICT, SPRING INDEPENDENT SCHOOL DISTRICT,
TIMBER LANE UTILITY DISTRICT, WEST HARRIS COUNTY
MUNICIPAL UTILITY DISTRICT NO. 6, Appellees






On Appeal from the 11th District Court

Harris County, Texas

Trial Court Cause No. 2002-03788






OPINION ON REHEARING

 We withdraw our Opinion of April 19, 2007 and issue this one in its stead. 
Excel Auto and Truck Leasing, L.L.P.'s motion for rehearing is denied. 

 In this suit for delinquent ad valorem taxes, Excel Auto & Truck Leasing,
L.L.P., appellant/taxpayer, complains of the trial court's granting summary judgment
in favor of the various taxing units, appellees. In three issues, Excel argues that the
trial court erred in (1) finding that it was the owner of the vehicles and liable for ad
valorem taxes; (2) finding that there was no genuine issue as to any material fact as
to ownership of the vehicles; and (3) granting summary judgment to Pasadena
Independent School District ("ISD"), which filed no Motion for Summary Judgment,
rendering the judgment interlocutory. 

 We affirm. 

Background


 This action arises from the non-payment of ad valorem taxes by Excel Auto &
Truck Leasing, L.L.P. Pasadena ISD filed a delinquent tax suit against Excel, and
numerous taxing units intervened. The intervening taxing units sought to collect
delinquent personal property taxes on vehicles that the taxing units allege were
owned by Excel. The Tax Master recommended judgment for the taxing units, and
Excel appealed the recommendation to the trial court and requested a jury trial de
novo. The taxing units moved for summary judgment contending that Excel is the
owner of the vehicles for which the 2002 and 2003 delinquent taxes are due and
owing, and Excel is responsible for the payment of those taxes. Attached to the
motions were certified copies of the delinquent tax records.

 Excel responded by asserting that it does not own the vehicles because its
"leases" are actually security agreements. It argued that "it is not the owner of the
vehicles and the lease agreement form used is actually a security agreement creating
a security interest in the vehicles its customers own." Its customers have possession
of the automobiles and insure and care for them, but Excel maintains a lien by
possession of the original title. Excel included an affidavit from Larry Tschoerner,
Excel's general manager and finance director, in which he testified that Excel's
customers were responsible for paying the taxes on their vehicles. The affidavit
further states that, "in addition, pursuant to the terms of the agreement, these
agreements could not be terminated by a customer." Excel asked the trial court to
deny the taxing units' motions for summary judgment, enter judgment in favor of
Excel as to no tax liability, or "on the alternative, that the Court find as a matter of
law, that the form agreement Excel used was a security agreement, and/or that Excel
is not the owner of the vehicles, or, in the alternative, that one or both of these matters
should be submitted to the Jury in this case for a determination of the fact questions
involved."

 The trial court found that there was no genuine issue as to any material fact that
the taxing units were entitled to judgment as a matter of law and that the motions
should in all things be granted against Excel Auto and Truck Leasing, L.L.P. and
Excel Lease Fund, Inc. as successor in interest to BLJ & Associates, Inc. d/b/a Excel
Financial Company (in rem only). (1) 

Interlocutory Judgment


 In issue three, Excel contends that the trial court erred in granting summary
judgment to Pasadena ISD, which filed no motion for summary judgment, rendering
the judgment interlocutory.

 The taxing units supplemented the appellate record with Pasadena ISD's 
motion for summary judgment. We overrule issue three.

Ownership of Vehicles
 

 In issues one and two, Excel argues that the trial court erred in finding that it
was the owner of the vehicles and liable for ad valorem taxes and in finding that there
was no genuine issue as to any material fact as to ownership of the vehicles.

Summary Judgment Standard of Review

 A party moving for summary judgment must conclusively prove all of the
elements of its cause of action or defense as a matter of law. Tex. R. Civ. P. 166a(c);
Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222-23 (Tex. 1999). When, as here, both
sides move for summary judgment, and the trial court grants one motion but denies
the other, a reviewing court should review both sides' summary judgment evidence,
determine all questions presented, and render the judgment that the trial court should
have rendered. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex.
2000). When a summary judgment does not specify or state the grounds on which the
trial court relied, the non-movant on appeal must negate any grounds on which the
trial court could have relied, and we will affirm the summary judgment on appeal if
any of the grounds presented in the motion is meritorious. See Harwell v. State Farm
Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995); Mellon Serv. Co. v. Touche
Ross & Co., 17 S.W.3d 432, 435 (Tex. App.--Houston [1st Dist.] 2000, no pet.). A
non-movant is required to show that each ground alleged in the motion for summary
judgment was insufficient to support summary judgment. Star-Telegram, Inc. v. Doe,
915 S.W.2d 471, 473 (Tex. 1995).
Ad Valorem Taxes

 All tangible personal property is taxable unless otherwise exempt by law. Tex.
Tax Code Ann. § 11.01 (Vernon 2004). Property taxes "are the personal obligation
of the person who owns or acquires the property on January 1 of the year for which
the tax is imposed." Tex. Tax Code Ann. § 32.07 (Vernon 2004). In a prosecution
for the collection of delinquent taxes, certified copies of a taxing unit's tax records
or tax statements constitute prima facie evidence of all of the elements of the taxing
unit's petition, including ownership of the property, and create a presumption that the
taxing units complied with all of the requirements imposed upon them by law. Tex.
Tax Code Ann. § 33.47(a) (Vernon 2004); Davis v. City of Austin, 632 S.W.2d 331,
333 (Tex. 1982); Aldine Indep. Sch. Dist. v. Ogg, 122 S.W.3d 257, 263-64 (Tex.
App.--Dallas 2003, no pet.). It is an affirmative defense to tax liability that the
person against whom the tax is assessed was not the owner of the property at the time
of assessment. Tex. Tax Code Ann. § 42.09(b)(1) (Vernon 2004). It has also been
held that a person holding a lien or other security upon the property is not an owner
for tax purposes. Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist., 52
S.W.3d 495, 497 (Tex. App.--Dallas 2001, pet. denied).

 Here, the taxing units attached certified copies of their tax records to their
motions for summary judgment, thus establishing their prima facie case. In response,
Excel asserted the affirmative defense that it was not the owner of the vehicles
because its leases should be interpreted as security agreements, making the lessees
the actual owners of the vehicles. Excel did not dispute the amount of taxes or any
aspect of the levy of the taxes. Its only dispute is whether it can be taxed as the
owner of the vehicles. The taxing units argue that, because Excel is the owner of the
property and not merely a lienholder or a secured party as it claims to be, Excel is
personally liable for the property taxes imposed. 

Analysis

 The Texas Business and Commerce Code controls the determination of whether
a transaction, in the form of a lease, creates a lease or security interest. Tex. Bus. &
Com. Code Ann. § 1.203 (Vernon Supp. 2006). Section 1.203 sets forth the
following two-part test to determine whether an agreement constitutes a lease or a
security interest:

 Lease Distinguished From Security Interest

 (a) Whether a transaction in the form of a lease creates a lease or
security interest is determined by the facts of each case.


 (b) A transaction in the form of a lease creates a security interest if
the consideration that the lessee is to pay the lessor for the right
to possession and use of the goods is an obligation for the term of
the lease and is not subject to termination by the lessee, and:


 (1) the original term of the lease is equal to or greater than the
remaining economic life of the goods;


 (2) the lessee is bound to renew the lease for the remaining
economic life of the goods or is bound to become the
owner of the goods;


 (3) the lessee has an option to renew the lease for the
remaining economic life of the goods for no additional
consideration or for nominal additional consideration upon
compliance with the lease agreement; or 


 (4) the lessee has an option to become the owner of the goods
for no additional consideration or for nominal additional
consideration upon compliance with the lease agreement.


 . . .


Id. (emphasis added). By enacting Section 1.203, Texas has adopted the official
version of Uniform Commercial Code Section 1-201(37). Accordingly, we are
guided by decisions from other jurisdictions which interpret this uniform statute. See
e.g., Franklin Nat'l Bank v. Boser, 972 S.W.2d 98, 103 (Tex. App.--Texarkana 1998,
pet. denied).

 To create a security interest, the first part of this test requires that the rental
payments the lessee must pay cannot be terminable by the lessee during the term of
the lease. Tex. Bus. & Com. Code Ann. § 1.203. This factor requires the existence
of a "hell or high water" clause. See In re Triplex Marine Maint. Inc., 258 B.R. 659,
669 (Bankr. E.D. Tex. 2000). A "hell or high water" clause requires that the lessee,
once it accepts the leased item, must pay its rent in all events (i.e., come hell or high
water) without regard for the proper function of the item or the conduct of the lessor
with respect to the subject or any other transaction. See id. at n.20. (2) The second part
of the conjunctive test lists four factors, one of which must also exist for the lease to
be deemed a security interest. (3) 

 This two-part test focuses on the economics of the transaction rather than the
intent of the parties or the label of the document. Boser, 972 S.W.2d at 103; In re
Triplex Marine Maint. Inc., 258 B.R. at 668-69. For leases which satisfy the
foregoing bright-line two-part test, the inquiry comes to an end--such leases
constitute security interests as a matter of law. In re Triplex Marine Maint. Inc., 258
B.R. at 668-69. If the bright-line test is not satisfied, the finding of a security interest
is not mandated, and the court may examine additional facts, recognized by the
statute, to determine whether the economic realities of a particular transaction create
a security interest. Id. 

 In this case, Excel's Motor Vehicle Lease Agreements do not meet the first part
of the test because they do not contain "hell or high water" clauses. Instead, they
contain provisions, which specifically state that the entire lease, including the
provisions for the payment of the rent over the term of the agreement, can be
terminated at any time at the will of the lessee. Paragraphs 23 of Excel's Motor
Vehicle Lease Agreements provide as follows:

 23. LEASE TERMINATION: This Lease will end ("terminate")
when one of the following events occurs, whichever happens
first: (a) You choose to end this Lease early and return the
Vehicle to us; . . .

 

This language cannot meet the first part of the test because, unlike a hell or high
water clause, it does not require the payment of all rents, both past due and due in the
future for the term of the lease, upon a lessee's termination of the lease. See, e.g, In
re Triplex Marine Maint. Inc., 258 B.R. at 669 (holding that the first part of the test
was met by the inclusion of the following language in the lease in capital letters under
the heading of "Important Conditions" that: YOU [the debtor] UNDERSTAND AND
AGREE THAT: (A) THE LEASE CANNOT BE CANCELED BY YOU AT ANY
TIME FOR ANY REASON . . . .").

 

 Nevertheless, Excel argues that its leases satisfy the first part of the test
because a "hell or high water" clause is not required--the leases' early termination
clause serves the same function. We disagree.

 Excel has not cited to us, nor do we find, any case law under the current
version of Section 1.203 that dispenses with the requirement of an express hell or
high water clause to establish the existence of a security interest. (4) Furthermore, the
early termination provision cannot substitute for a hell or high water clause because
it does not prevent the lessee from terminating the agreed upon consideration to
Excel--the payment of the full amount of the rental payments under the lease. The
early termination clause does not require that, at the time of termination, the lessee
still be responsible for payment of past due and unmatured or future rental payments
under the terms of the lease. In fact, in the event of a lessee termination, the amount
paid to Excel for future rental fees will vary depending on the calculation of the
"realized value" of the vehicle versus the "adjusted lease balance" due on the vehicle
at the time of termination. Paragraph 24 of Excel's Motor Vehicle Lease Agreements
provides that:

 24. EARLY TERMINATION: This section applies if the Lease
terminates before the end of the scheduled Lease term. . . . On
early termination, you will return the Vehicle to us. You will
deliver it to our address or to another reasonable location at our
request.


 (a) Early Termination Liability. On early termination, you agree
to pay us:


 (1) A VEHICLE RETURN FEE, if any, given in section
28(b);


 (2) All accrued and unpaid amounts that are due or past due
at that time . . . ;


 (3) The amount by which the "Adjusted Lease Balance" is
greater than the "Realized Value: [sic] of the
Vehicle (5). . . ; and


 (4) All official fees and taxes imposed in connection with the
Lease termination.

 

At best, this provision is nothing more than a liquidated damages provision, not the
functional equivalent of a hell or high water clause. Thus, we hold that Excel's
leases do not satisfy the two-part test for establishing the existence of a security
interest. 

Other Considerations

 We next turn to an examination of the lease to determine whether there are
any other factors that have been recognized by the courts to indicate the existence of
a security interest. Courts have recognized that, if, under the terms of the lease, a
lessee has no equity interest whatsoever in the property, the lease may be a true lease
and not a security interest. Touch of Class Leasing v. Mercedes-Benz Credit of
Canada, Inc., 591 A.2d 661, 665-66 (N.J. Super. Ct. 1991). This is the case here.
Excel's leases expressly provide that the lessee has no equity interest in the vehicle.
Paragraph 27 of Excel's Motor Vehicle Lease Agreements provides, in pertinent part,
as follows: 

 27. TITLING, OFFICIAL FEES AND TAXES: You understand
and agree that this agreement is a lease only. We own the
Vehicle and it will be titled in our name or in the name of our
assignee. You have no ownership interest in the Vehicle except
for any future options to purchase provided in this Lease.


Excel argues that, despite the language above, the leases are security interests, not
true leases, because, under their terms, the lessee is required to: pay taxes, if any, on
the vehicle; pay for and maintain insurance on the vehicles; and pay for the service
and maintenance of the vehicle. However, contrary to Excel's arguments, courts have
held that lessee's acceptance of the costs similar to those stated in Excel's lease are
typical of true leases, not secured transactions, and more likely reflect the relative
bargaining power between parties rather than the character of the transaction. See
Rainier Nat'l Bank v. Inland Mach. Co., 631 P.2d 389, 395 (Wash. 1981) (stating that
"lessor is either going to include those costs within rental charge or agree to lower
rent, if lessee takes responsibility for them"); Mr. C's Rent To Own v. Jarrels (In re
Jarrells), 205 B.R. 994, 998-99 (Bankr. M.D. Ga. 1997) (recognizing that, while
debtor would be responsible for all repairs, maintenance, taxes, and insurance, these
factors alone are not controlling). Business and Commerce Code Section 1.203(c)
specifically addresses this issue and notes that such facts are not controlling in the
determination of a security interest:

 (c) A transaction in the form of a lease does not create a security
interest merely because:


 . . .


 (2) the lessee assumes risk of loss of the goods;


 (3) the lessee agrees to pay, with respect to the goods, taxes,
insurance, filing, recording, or registration fees, or service
or maintenance costs;


Tex. Bus. & Com. Code Ann. § 1.203 (c) (Vernon Supp. 2006).


 Excel's leases do not comply with the two-part test for the existence of a
security interest rather than a lease. This mandates the conclusion that the agreements
are true leases, and Excel is the owner of the vehicles. Accordingly, Excel's
affirmative defense of nonownership, based on its claim that its leases with its
customers were security interests, fails as a matter of law. See Tex. Bus. & Com.
Code Ann. § 1.203(b); In re Powers, 983 F.2d 88, 90 (7th Cir. 1993) ("where a
lessee has the right to terminate the lease before the option arises to purchase the
property for no additional or nominal consideration, the lease is a true lease and
cannot be a conditional sale); In re Yarbrough, 211 B.R. 654, 658-59 (Bankr. W.D.
Tenn. 1997) (noting that court found it sufficient for finding of true lease that lease
was terminable at will); In re Arthur Rigg, 198 B.R. 681, 685 (Bankr. N.D. Tex.
1996) (court held that "[a] lease agreement can be construed to create a security
interest only if the agreement prohibits the lessee from terminating the lease," if it
does not, then the agreement is considered a true lease rather than a security
agreement).

 We hold that, because the taxing units' production of certified copies of tax
records or tax statements constituted prima facie evidence of all the elements in their
petitions and Excel's affirmative defense of nonownership failed, there is no genuine
issue of material fact for the trial court to determine in this case. Excel failed to rebut
the taxing units' prima facie case of ownership. We overrule Excel's issue one.

Fact Question


 In issue two, Excel contends that the trial court erred in finding that there was
no genuine issue as to any material fact as to ownership of the vehicles.

 Once the movant establishes that it is entitled to summary judgment, the non-movant can defeat that showing only by producing evidence that raises a fact issue. 
Haight v. Savoy Apartments, 814 S.W.2d 849, 851 (Tex. App.--Houston [1st Dist.]
1991, writ denied). "To constitute competent summary judgment evidence, affidavits
must be made on personal knowledge, set forth facts as would be admissible in
evidence and show affirmatively that the affiant is competent to testify to matters
stated therein." Tex. R. Civ. P. 166a(f).

 Larry Tschoerner, Excel's general manager and finance director, submitted an
affidavit in which he testified that Excel's customers were responsible for paying the
taxes on their vehicles. Most of Tschoerner's affidavit focused on addressing the four
factors listed in Section 1.203 of the Texas Business and Commerce Code. Having
already held that Excel's leases expressly provide that they are subject to termination
by the lessee--the prerequisite to considering the four additional factors--we need
not examine Tschoerner's affidavit pertaining to these four factors. 

 The affidavit further states that, "in addition, pursuant to the terms of the
agreement, these agreements could not be terminated by a customer." This is contrary
to the plain language of the agreement. Whether a contract is ambiguous is a
question of law. Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 423 (Tex. 2000). 
If a court determines that a contract is ambiguous, then the court may consider
extraneous evidence to ascertain the true meaning of the instrument. Nat'l Union
Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). Here, neither
party has claimed ambiguity in the subject lease agreements. Accordingly, we may
not consider Tschoerner's testimony that changes the plain language of the lease
agreements, as noted above.

 We hold that there is no genuine issue as to any material fact as to ownership
of the vehicles. We overrule issue two.











Conclusion


 Because Excel failed to raise a material fact issue refuting the ownership of the
vehicles, we hold that the trial court did not err in denying Excel's summary
judgment. We affirm the trial court's judgment.

 

 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.


Justice Keyes concurring in the judgment.


Justice Keyes dissenting from denial of rehearing.

 
1. Excel Lease Fund, Inc. as successor in interest to BLJ & Associates, Inc. d/b/a Excel
Financial Company is not a party to this appeal.
2. Under the previous version of this statute, the existence of a "hell or high water
clause" was also a requirement to create a security interest. See, e.g., In re Rigg, 198
B.R. 681, 685 (Bankr. N.D. Tex. 1996) (stating that "[a] lease agreement can be
construed to create a security interest only if the agreement prohibits the lessee from
terminating the lease."). 
3. For purposes of the summary judgment motion, the parties do not dispute that one of
these four factors exists in this case: (4) that the lessee has an option to become the
owner of the goods for no additional consideration or for nominal additional
consideration upon compliance with the lease agreement.
4. To the extent that Excel relies on caselaw developed under the previous version of
Section 1.203 to argue that a hell or high clause is not required for a security interest
to exist, we find this caselaw not helpful to our analysis in this case. As noted by the
court in Triplex, the current version of Section 1.203 contains significant changes to
the statute. In re Triplex Marine Maint. Inc., 258 B.R. at 669. As a result, prior cases
consider certain factors as attributes of a security interest, which are no longer
considered as such under the current version. Id.
5. Paragraph 24 (c) provides as follows:

 

 (c) Determining the Realized Value. If the law so requires, we will send
you a notice and wait any required period of time before taking action
to establish the Vehicle's Realized Value. Unless otherwise required
by law, the Realized Value will be determined in one of the following
ways: (1) by a written agreement between you and us reached within
15 days of the Vehicle's return; (2) by the professional appraisal of an
independent third party agreed to by you and us and obtained at your
expense within 15 days of the Vehicle's return (or longer period, if all
parties so agree or if the law so requires). The appraisal shall be of the
Vehicle's wholesale value and shall be final and binding on both you
and us; or (3) if it is not determined within 15 days of the Vehicle's
return, we will determine the Realized Value in accordance with
accepted practices in the automobile industry for determining the
wholesale value of used vehicles by obtaining a wholesale cash bid for
the purchase of the Vehicle or by disposing of the Vehicle in an
otherwise commercially reasonable manner. . . .